IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:16-cv-00789 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER GRANTING PLAINTIFF'S** |
| | : | **MOTION TO REMAND CASE TO** |
| LITH TRANSPORT, INC., | : | **STATE COURT** |
| | : | |
| Defendant. | : | |

This matter is before the Court on Plaintiff Total Quality Logistics, LLC's Motion to Remand Case to State Court. (Doc. 9.) Defendant Lith Transport, Inc. has filed a memorandum in opposition (Doc. 14), to which Plaintiff has replied (Doc. 19). For the reasons that follow, Plaintiff's Motion will be GRANTED.

## I.    BACKGROUND[1]

Plaintiff Total Quality Logistics, LLC ("TQL") is a freight broker. (Doc. 4 at PageID 42 (¶ 2).) It locates motor carriers to pick up and deliver the freight of its customers at the places and times specified by them. (*Id.* at PageID 42 (¶ 4).) On January 7, 2015, TQL entered into a Broker/Carrier Agreement with Defendant Lith Transport, Inc. ("Lith Transport") to provide freight services to its customers. (*Id.* at PageID 43 (¶ 5) & PageID 46.) TQL claims that, at some later point, Lith Transport failed to timely and properly deliver a load of calcium propionate on behalf of its customer, Rich Products Ingredients. (*Id.* at PageID 43 (¶¶ 10–11) & PageID 53 (Exh. B).) As a result, TQL seeks damages in the amount of $34,208.58, as well as

---

[1] Background facts are drawn from Plaintiff's Complaint (Doc. 4) and the docket maintained by the Clerk of this Court.

interest, plus its reasonable expenses, attorney's fees, and costs. (*Id.* at PageID 43– 44 (¶¶ 12–14).)

TQL filed a three-count Complaint against Lith Transport in the Clermont County, Ohio Court of Common Pleas. (*Id.* at PageID 42.)[2] It alleged breach of contract (Count One)[3] and, in the alternative, unjust enrichment (Count Two)[4] and promissory estoppel (Count Three).[5] Lith Transport thereafter removed the case from Clermont County to the Southern District of Ohio on the basis of 28 U.S.C. §§ 1331, 1337(a), 1441, and 1446(b) and 49 U.S.C. §§ 14501 and 14706. (Doc. 1 at PageID 3–4 (¶¶ 8–15).) TQL's timely Motion to Remand followed. (Doc. 9.)

## II.  STANDARD OF LAW

On a motion for remand, the question presented is whether the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Defendant Lith Transport, as the removing party, bears the burden of establishing that removal was proper. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000) ("The burden of showing that the district court has original jurisdiction is on the party seeking removal.") In deference to federalism concerns, a district court must resolve any doubt of its removal jurisdiction in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

Removal of an action to federal court pursuant to 28 U.S. C. § 1441(a) requires a claim "arising under" federal law. 28 U.S.C. § 1331. "The 'arising under' gateway into federal court has two distinct portals." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006). This Court has original jurisdiction if Plaintiff TQL's well-pleaded complaint establishes that

---

[2] Filing in this forum was consistent with Section 15 ("Governing Law") of the Broker/Carrier Agreement, which provides "CARRIER and BROKER further agree that the exclusive jurisdiction and venue for any lawsuit necessary to resolve a dispute arising out of this Agreement shall be in state court in Clermont County, Ohio." (Doc. 4 at PageID 50.)

[3] (Doc. 4 at PageID 42–44 (¶¶ 1–15).)

[4] (Doc. 4 at PageID 44 (¶¶ 16–18).)

[5] (Doc. 4 at PageID 44–45 (¶¶ 19–22).)

either federal law creates the cause of action *or* that TQL's right to relief involves the resolution of a substantial question of federal law. *Id.* The "well-pleaded complaint" rule provides that federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003) (quoting *Long, supra*, 201 F.3d at 758 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

## III. ANALYSIS

Lith Transport asserts that removal is proper under the Carmack Amendment to the Interstate Commerce Act,[6] 49 U.S.C. § 14706, and the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501(c). (Doc. 1 at PageID 3 (¶¶ 8–10).) These federal statutes exclusively govern allegations of damage to goods shipped in interstate commerce, Lith Transport contends, and thus they preempt and bar TQL's state causes of action of breach of contract, unjust enrichment, and promissory estoppel. (*Id.*) Furthermore, because the amount in controversy for the bill of lading at issue exceeds $10,000, Lith Transport maintains that this Court has original jurisdiction of TQL's claims pursuant to 28 U.S.C. § 1337(a).[7] (Doc. 1 at PageID 3 (¶ 11).)

TQL responds that Lith Transport fails to understand a critical aspect of the Carmack Amendment—namely, that it is *not* applicable to claims asserted by or against a freight *broker*

---

[6] The Carmack Amendment, enacted in 1906, initially was codified at 49 U.S.C. § 11707. Under the ICC Termination Act of 1995, it was revised, recodified, and replaced by 49 U.S.C. § 14706. *Exel, Inc. v. Southern Refrigerated Transp., Inc.*, 807 F.3d 140, 150 n.9 (6th Cir. 2015).

[7] 28 U.S.C. § 1337(a) reads as follows:

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

(Emphasis in original.)

3

such as TQL. Moreover, the FAAAA preempts states from enacting laws or regulations that govern interstate commerce, but it does not render invalid contractual indemnification clauses between brokers and motor carriers. TQL is correct.

## A. The Carmack Amendment

Briefly stated, Congress's intent in enacting the Carmack Amendment was to create "a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. Southern Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). The carrier is liable "to the person entitled to recover under the receipt or bill of lading"—in other words, the shipper. *See* 49 U.S.C. § 14706(a)(1). The Carmack Amendment struck a "compromise" between shippers and carriers:

> In exchange for making carriers strictly liable for damage to or loss of goods, carriers obtained a uniform, nationwide scheme of liability, with damages limited to actual loss—or less if the shipper and carrier could agree to a lower declared value of the shipment. Making carriers strictly liable relieved a shipper of the burden of having to determine which carrier damaged or lost its goods (if the shipper's goods were carried by multiple carriers along a route). It also eliminated the shipper's potentially difficult task of proving negligence. In return, carriers could more easily predict their potential liability without closely studying the tort law of each state through which a shipment might pass. Carriers' liability was limited to the actual value of the goods shipped—punitive damages were not available.

*Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014) (citations omitted).

The Broker/Carrier Agreement executed by the parties identifies TQL as the freight "broker" and Lith Transport as the motor "carrier." (Doc. 4 at PageID 46, 52.) A broker, however, is not the same as a shipper. Thus, it cannot sue a carrier under the Carmack Amendment. *Exel*, 807 F.3d at 148–49 (stating that, "[N]othing in the Carmack Amendment suggests that Congress also intended to protect the broker-carrier relationship by granting

4

brokers a direct right to sue under the statute.") (citations omitted); *Traffic Tech, Inc., v. Arts Trans., Inc.*, No. 15 C 8014, 2016 WL 1270496, at * 3 (N.D. Ill. Apr. 1, 2016) (dismissing Carmack Amendment claims, because the allegations in the complaint suggest that the plaintiff is seeking to proceed only in its own right as a broker); *Keystone Logistics, Inc. v. Struble Trucking LLC*, No 3:14cv1938, 2014 WL 6750052, at *3 (N.D. Ind. Dec. 1, 2014) (when the plaintiff seeks to recover on a contract that is not a bill of lading, the Carmack Amendment does not apply, the district court lacks jurisdiction, and remand is appropriate).

TQL calls our attention to a decision recently issued by our colleague in the Western Division, Judge Timothy S. Black, in which he granted a motion to remand for this precise reason. *Total Quality Logistics, LLC v. James M. O'Malley d/b/a/ Mack Logistics*, No 1:16-cv-636, 2016 WL 4051880 (S.D. Ohio July 28, 2016). There, TQL had initiated a lawsuit against Mack Logistics in the Hamilton County, Ohio Court of Common Pleas alleging a breach of the Broker/Carrier Agreement between the parties. *Id.* at *1. In the alternative, TQL alleged it was entitled to recover under the common law theories of unjust enrichment and promissory estoppel. *Id.* Mack Logistics removed the case to the Southern District, claiming that TQL's state claims were preempted by the Carmack Amendment and thus properly brought in federal court. However, citing *Exel*, Judge Black concluded the Court lacked subject matter jurisdiction to proceed and consequently ordered a remand:

> Here, Defendant [Mack Logistics] is a carrier and Plaintiff [TQL] is a broker. Plaintiff is suing Defendant for its breach of the Broker[/]Carrier Agreement. . . . Since Plaintiff is a broker, it is not subject to the Carmack Amendment. Without the Carmack Amendment, Defendant has failed to demonstrate any basis for concluding that this Court has federal question jurisdiction.

*Id.* at *3. TQL urges that the same result is required in this civil action.

5

Not so, according to Lith Transport, because TQL attached to its Complaint a "Release and Assignment" executed by its customer, Rich Products Ingredients. (Doc. 4 at PageID 53.) In exchange for $33,454.93, Rich Products Ingredients appears to have both released TQL from any liability for the damaged cargo shipment and assigned to TQL its right to sue Lith Transport therefor. (*Id.*) Lith Transport maintains that attachment of this Assignment suggests that TQL is not acting as broker, but, rather, is standing in the shoes of its customer, the shipper. In reply, TQL states that it is "well within its rights to decide what claims to pursue in this litigation and it is pursuing *only* those rights it has under the Broker/Carrier Agreement." (Doc. 19 at PageID 148 (footnote and citation omitted) (emphasis added).)

Under the well-pleaded complaint rule, a federal question must appear on the *face* of the complaint. *Caterpillar, supra*, 482 U.S. at 392. In this matter, it clearly does not. As Plaintiff, TQL is indeed the "master of the claim." *Id.* It has the right to choose whether to sue Lith Transport as a broker, or as Rich Products Ingredients' assignee. TQL obviously has picked the former. Given its preference, it is unclear why TQL would attach the "Release and Assignment" executed by Rich Products Ingredients to its Complaint. Regardless, this document does not serve to confer subject matter jurisdiction on this Court.

## B. The FAAAA

Among other things, the FAAAA prohibits a State from enacting or enforcing any "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). Courts have held, however, that this very broad preemption does not extend to ordinary breach of contract claims. *See, e.g., Wise Recycling, LLC v. M2 Logistics*, 943 F. Supp. 2d 700, 704–05 (N.D. Tex. 2013). Indeed, TQL has successfully litigated this very issue in a

6

sister district court. *See VPP Group, LLC v. Total Quality Logistics, LLC*, No. 13-cv-185-wme, 2014 WL 1515510 (W.D. Wis. Apr. 18, 2014). There, as here, the motor carrier argued that TQL's breach of contract claims—grounded in the indemnification and contribution provisions within the Broker/Carrier Agreement—were preempted by the FAAAA. *Id.* at *9–10. Judge Conley rejected this stance, noting that "TQL relies on the parties' contract in support of its claims, not a state statutory or regulatory requirement concerning [the motor carrier's] services." *Id.* at *10 (footnote omitted).

Lith Transport did not address TQL's argument with respect to FAAAA preemption. In light of the authority cited, this Court is persuaded that TQL's breach of contract claim is not preempted by the FAAAA.

## IV.    CONCLUSION

Based on the foregoing reasons, Plaintiff Total Quality Logistics, LLC's Motion to Remand Case to State Court (Doc. 9) is hereby **GRANTED**. Pursuant to 28 U.S.C. §1447(c),[8] the Clerk is **ORDERED** to **REMAND** this civil action to the Clermont County, Ohio Court of Common Pleas. Plaintiff's request for an award of costs and fees (including attorney's fees) in connection with its Motion to Remand,[9] however, is **DENIED**. If Plaintiff had no intention of pursuing a Carmack claim as its customer's assignee, it should not have attached the "Release and Assignment" as an exhibit to its Complaint.

**IT IS SO ORDERED.**

Dated:  9/29/16

Judge Susan J. Dlott
United States District Court

---

[8] "If *at any time before final judgment* it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphases added).
[9] (Doc. 19 at PageID 150, 155.)

7